RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PHAR-MOR, INC.,

                          *Appellant,*

    *v.*

MCKESSON CORPORATION,

                          *Appellee.*

Nos. 05-4525/4526

---

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
Nos. 04-01013; 04-01015—Christopher A. Boyko, District Judge.

Argued: December 7, 2007

Decided and Filed: July 17, 2008

Before: BATCHELDER, Circuit Judge;[*] BUNNING, District Judge.[**]

---

## COUNSEL

**ARGUED:** Timothy M. Reardon, NADLER, NADLER & BURDMAN CO., Youngstown, Ohio, for Appellant. Jeffrey K. Garfinkle, BUCHALTER NEMER, Irvine, California, for Appellee. **ON BRIEF:** Timothy M. Reardon, Michael A. Gallo, NADLER, NADLER & BURDMAN CO., Youngstown, Ohio, for Appellant. Jeffrey K. Garfinkle, BUCHALTER NEMER, Irvine, California, for Appellee.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. At issue in this bankruptcy case is whether a vendor's administrative-expense priority on its reclamation claim is effectively extinguished when the goods subject to reclamation are sold and the proceeds used to satisfy a secured creditor's superior claim. Because we hold that it is not, we AFFIRM the district court's decision.

---

[*] The Honorable Karen Nelson Moore, Circuit Judge, was present at oral argument but did not take part in the consideration or decision of the case.

[**] The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.

Phar-Mor, Inc. filed Chapter 11 bankruptcy on September 24, 2001, but continued to operate as a debtor in possession (DIP).  In response, several vendors, including McKesson Corporation, filed timely "reclamation claims," pursuant to 11 U.S.C. § 546(c) and Ohio Rev. Code § 1302.76 (UCC § 2-702), seeking to recover goods they had delivered to Phar-Mor on credit.  On October 5, 2001, Phar-Mor proposed "that each Vendor be granted an administrative expense priority claim under Section 503(b) in the amount (if any) of its allowed reclamation claim," and reported reclamation claims from 141 vendors totaling $18 million.  All but McKesson have since settled.

On the petition date, Phar-Mor owed its secured creditors $103 million.  The bankruptcy court authorized Phar-Mor to borrow up to $135 million to repay these pre-petition secured creditors.[1]  Phar-Mor did so and those security interests were extinguished.  Phar-Mor gave the new creditors (i.e., "DIP Lenders") super-priority status over the remaining security interests, which also meant that their claims had priority over any administrative expense claims, such as McKesson's.

Upon entering bankruptcy, Phar-Mor closed 65 stores and held going-out-of-business sales, which generated $30 million.  Phar-Mor continued to lose money, continued to close stores, and eventually had a final going-out-of-business-liquidation sale, which generated $103 million.  Phar-Mor was able to pay off the $135 million post-petition loan from the DIP Lenders and was left with $64.5 million.  After expenses, fees, and the money allotted to payment of the reclamation claims, $30 million was left towards payment of $185.5 million in general unsecured claims.

On February 13, 2003, Phar-Mor moved the bankruptcy court to reclassify the reclamation claims as general unsecured claims.  Phar-Mor argued that the vendors' administrative-expense priority was extinguished when the goods subject to reclamation were sold and the proceeds used to pay off the DIP Lenders.  The court denied the motion and held that, even though the reclamation claims were rendered "subject to" the DIP Lenders' super-priority, the vendors' properly filed reclamation claims still had administrative-expense priority over the general claims.

Phar-Mor moved the bankruptcy court for reconsideration (twice), and was denied (twice); appealed to the district court, which affirmed the bankruptcy court; and now appeals to this court — each time asserting the same arguments that it had asserted to the bankruptcy court in the first instance.  Because we find that the bankruptcy court properly granted McKesson an administrative expense priority in lieu of its reclamation claim, we affirm the bankruptcy court's decision.

## II.

"We review the bankruptcy court's decision directly, according no deference to the district court.  The bankruptcy court's findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*."  *In re S. Air Transp., Inc.*, 511 F.3d 526, 530 (6th Cir. 2007) (citation omitted).  This case presents a question of law or an application of the law to the given circumstances, and the bankruptcy court's factual findings are immaterial to the disposition of this appeal.

The parties do not dispute the meaning or effect of the bankruptcy code provision in this case — a provision that has since been amended.  The prior (applicable) version states, in pertinent part:

---

[1] The bankruptcy court authorized Phar-Mor to borrow the $135 million and gave the DIP Lenders super-priority status in an Interim Order dated September 24, 2001 (the petition date).  Phar-Mor borrowed the money, repaid the pre-petition secured creditors (extinguishing their security interests), and gave the DIP Lenders super-priority security interests that same day.  The bankruptcy court formalized this authorization in a Final Order dated October 23, 2001.

> [T]he rights and powers of a trustee . . . are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but — . . . the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court —
>
> (A)     grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title [i.e., an administrative expense]; or
>
> (B)     secures such claim by a lien.

11 U.S.C. § 546(c)(2) (1998) (amended in 2005 by Pub. L. 109-8, § 1227(a)). There is no question that McKesson sold goods to Phar-Mor in the ordinary course of its business, that Phar-Mor received the goods while insolvent, or that McKesson, upon discovering Phar-Mor's insolvency, made a timely, written demand for reclamation. The immediate question is whether McKesson had a statutory or common-law right, pursuant to Ohio law, to reclaim those goods. If so, then the court, having denied reclamation, was obligated to grant McKesson either an administrative-expense priority in the amount of the goods (as it did) or a lien on the proceeds resulting from the use of those goods by the debtor. But if not, then the court was not so obliged and McKesson's claim for the value of those goods may be properly regarded as merely a general unsecured claim.

Ohio statute provides an aggrieved seller with a right to reclaim its goods, and that right stems from "the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller." Ohio Rev. Code § 1302.76 (Official Comment 2 (1961)). This particular provision states:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this division the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

Ohio Rev. Code § 1302.76(B). In addition to creating (or codifying) this *right* to reclaim, this same statute also governs the aggrieved seller's *ability* to reclaim the goods in question, stating:

> The seller's right to reclaim under division (B) of this section is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under section 1302.44[2] of the Revised Code. Successful reclamation of goods excludes all other remedies with respect to them.

---

[2] Section 1302.44 of the Ohio Revised Code, titled "Power to transfer; good faith purchase of goods; entrusting defined," states in pertinent part:

> A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:
>
> . . .
>
> (4) The delivery was procured through fraud punishable as larcenous under the criminal law.

Ohio Rev. Code § 1302.44(A) (UCC 2-403).

*Id*. at § 1302.76(C). The statute's accompanying commentary explains that "[b]ecause the right of the seller to reclaim goods under this section constitutes preferential treatment as against the buyer's other creditors," successful reclamation bars the seller from pursuing any other remedies from the buyer, *id.* at Official Comment 3 (1966) — that is, the buyer is not treated as having breached the contract (by failing to pay), but rather, the contract is rescinded and the reclaimed goods are returned to the seller as though the contract had never been entered and the goods never delivered.

It appears clear from the plain language of this statute that McKesson had the *right* to reclaim the goods delivered to Phar-Mor. *See id*. at § 1302.76(B). This finding — that McKesson had a right to reclaim the goods — would seem to answer the pending question and end our analysis; the court, having denied reclamation, was indeed obligated to grant McKesson a priority on its claim, which it did by granting the administrative-expense priority in the amount of the goods

Phar-Mor argues, however, that McKesson did not have a *right* to reclaim the goods because McKesson did not have the *ability* to reclaim those goods, inasmuch as § 1302.76(C) renders a seller's right to reclaim "subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor." Phar-Mor contends that the DIP Lenders, who held a security interest in all of Phar-Mor's inventory, via an after-acquired-property clause in their security agreement, *see* Ohio Rev. Code § 1309.204, were "good faith purchasers." *See In re Pester Ref. Co.*, 964 F.2d 842, 844 (8th Cir. 1992) (stating that "most secured creditors are good faith purchasers under the UCC"). Thus, Phar-Mor surmises that, because McKesson's reclamation rights are "subject to" the DIP Lenders' security interest and because Phar-Mor sold McKesson's "reclamation goods" to satisfy the DIP Lenders' claim, McKesson is unable to reclaim the goods and, hence, is left without any *right* to reclaim the goods. *But see id*. at 846 (holding that an aggrieved seller's "right to reclaim was not extinguished because [the debtor] had secured creditors with perfected security interests").

In the case of *In re Mel Golde Shoes, Inc.*, 403 F.2d 658, 661 (6th Cir. 1968), we held that, under Kentucky law, a defrauded seller's right to reclaim his goods is superior to any right of attaching creditors, despite UCC 2-702's "subject to" provision. In finding that the secured creditor was not the type of good faith purchaser that would overcome the vendor's right to reclamation, we adopted some reasoning from a Kentucky Court of Appeals decision and said:

> [N]o reason exists why, as between attaching creditors and vendors asserting an enforceable equity growing out of the contract of sale, the latter should not be preferred. It would certainly be unjust to subject to the payment of the debts of their fraudulent vendee, goods he had improperly obtained from them, and which in equity, they were entitled to reclaim. This would virtually secure to such vendee the fruits of his fraud by the payment of his debts to the extent of the value of the goods, and defeat the equity of the vendor and the object of the statute.

*Id*. at 660 (quotation marks and citation omitted). Elsewhere, we reasoned similarly on a similar issue; this time considering the question from the viewpoint of Michigan law:

> [W]e agree that the rights reserved to the defrauded seller under [UCC 2-702] are the direct descendants of those historically preserved under the common law and so respected by the Bankruptcy Act. They are rights with respect to particular goods and in which the purchaser's title was historically voidable. In contrast, a priority within the meaning of the Bankruptcy Act contemplates a claim which is satisfied from the general assets of the bankrupt's estate and is asserted after the satisfaction of secured liens but before the debts of general creditors. A priority in bankruptcy should not depend for its existence upon the contingency of whether specific assets are within the bankrupt's estate. While the district court rejected this distinction because 'if reclamation is permitted in bankruptcy it will reduce the bankrupt's estate

at the obvious expense of all the unsecured creditors,' the logic is unpersuasive. The best response is that of Judge Blackmun in *O'Rieley v. Endicott-Johnson Corp.*, 297 F.2d 1, 9 (8th Cir. 1961), wherein the court upheld a pre-Code seller's petition for reclamation of goods sold to the bankrupt:

> 'While we realize that a decision in favor of Endicott has the practical effect, as pointed out by the Trustee in its argument, of favoring one creditor over the general creditors, this is necessarily true of any successful reclamation petition. It would be unjust to permit general creditors to benefit at the expense of one whose assets come into a bankrupt's possession under conditions which warrant rescission.'

*In re Federal's Inc.*, 553 F.2d 509, 518 (6th Cir. 1977) (editorial marks and citations omitted).

Phar-Mor relies on *In re Pittsburgh-Canfield Corp.*, 309 B.R. 277, 287 (B.A.P. 6th Cir. 2004), for the proposition that, when the goods subject to reclamation are sold to satisfy a secured creditor's superior claim, the goods subject to reclamation are gone and the vendor's right to a priority claim is gone with them. But, decisions by the Bankruptcy Appellate Panels are not binding on us, *see Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007) (citing H.R. Rep. No. 109-31 at 148 (2005), U.S. Code Cong & Admins. News 2005, 88, 206; H.R. Rep. No. 107-3, Prt. 1 at 112 (2001)); *In re Healthcentral.com*, 504 F.3d 775, 784 n.3 (9th Cir. 2007), and this proposition — which contradicts our reasoning (if not our holdings) in *Mel Golde Shoes* and *Federal's* — is simply not persuasive. As we said in *Federal's*, 553 F.2d at 518, "A priority in bankruptcy should not depend for its existence upon the contingency of whether specific assets are within the bankrupt's estate." And, as we said in *Mel Golde Shoes*, 403 F.2d at 660, "It would certainly be unjust to subject to the payment of the debts of their fraudulent vendee, goods [the vendee] had improperly obtained from [the aggrieved vendors], and which in equity, [the vendors] were entitled to reclaim."

For these same reasons, Phar-Mor's reliance on *In re Dana Corp.*, 367 B.R. 409 (Bankr. S.D. N.Y. 2007), *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D. N.Y. 2003), *In re Bridge Information Systems, Inc.*, 288 B.R. 133 (Bankr. E.D. Mo. 2001), *In re Arlco, Inc.*, 239 B.R. 261 (Bankr. S.D. N.Y. 1999), and *In re Steinberg's, Inc.*, 226 B.R. 8 (Bankr. S.D. Ohio 1998), is similarly unavailing. These holdings are not practical and their reasoning is not compelling. *See*, *e.g.*, Lisa Gretchko, *Seller Beware! Is your Reclamation Claim as Strong as you Think it Is?* 22-MAR Am. Bankr. Inst. J. 20, 50 (2003) (noting that these cases are "insensitive to the reality that inventory is often liquidated first and the proceeds paid to the secured creditor, and ignore[] the protection that UCC § 2-702 and Code § 546(c)(2) intended to give to reclaiming vendors").

In contrast, the court in *American Food Purveyors*, considering the UCC as codified in Georgia, adopted the reasoning of *Mel Golde Shoes*, 403 F.2d at 661, and held that a defrauded seller's right to reclaim goods is superior to any right of an attaching creditor, explaining:

> The issues of good faith, notice and knowledge are important here because [the after-acquired-property secured creditor] is attempting to acquire rights over goods which were essentially being held in trust by [the debtor/buyer] for [the seller], because of their acquisition by fraud. It was as if [the debtor/buyer] never had obtained title, and [the seller] is essentially trying to retake his own property. For these reasons, and because this is a court of equity and guided by equitable doctrines and principles, it was essential that [the creditor] demonstrate that it was in good faith and had no knowledge or notice of [the debtor/buyer]'s financial plight, in order to prevail.
>
> For the reason that the property was still [the seller]'s even after it was delivered, at least for the ten day period provided for in § 2-702, the court finds further that [the creditor] acquired no 'rights in the collateral' as required under [UCC § 9-204], in

regard to the [goods, i.e.,] 400 cases of perch. [A] secured party's rights, generally speaking, against the debtor's vendor are no greater than the debtor himself.

The court finds that rights under § 9-204 of the UCC means an ownership claim paramount to that of the seller and capable of specific enforcement in equity. Consequently, for the ten day period in question, [the debtor/buyer] could not have sustained an action in equity to keep these goods. All of the rights during this period were with the defrauded seller[].

*In re Am. Food Purveyors, Inc.*, 17 UCC Rep. Serv. 436, 1974 WL 21665 (Bankr. N.D. Ga. 1974) (no page numbers available; quotations and citations omitted). This reasoning is persuasive.

We find that Ohio Rev. Code § 1302.76(B) (UCC 2-207(2)) grants a properly reclaiming vendor, such as McKesson, a right to reclaim its goods and that § 1302.76(C) (UCC 2-207(3)) does not allow a secured creditor's claim to defeat that right. But, correspondingly, we find that 11 U.S.C. § 546(c)(2) (1998) grants the bankruptcy court the power to deny a properly reclaiming vendor, such as McKesson, its right to reclaim the goods, but only by granting the denied vendor either an administrative-expense priority in the amount of the goods or a lien on the proceeds resulting from the use of those goods by the debtor. In this case, the bankruptcy court granted McKesson an administrative-expense priority, and we have no basis to overturn its decision in this matter.

## III.

Based on the foregoing, we **AFFIRM** the district court's decision.