*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NATIONAL UNION FIRE INSURANCE CO.,

*Appellant,*

*v.*

No. 08-4537

VP BUILDINGS, INC.,

*Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-00196—Donald C. Nugent, District Judge.

Argued: December 4, 2009

Decided and Filed: June 4, 2010

Before: KENNEDY, COOK, and WHITE, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** G. Eric Brunstad, Jr., DECHERT, LLP, Hartford, Connecticut, for Appellant. H. Slayton Dabney, KING & SPALDING, New York, New York, for Appellee. **ON BRIEF:** G. Eric Brunstad, Jr., Matthew J. Delude, Collin O'Connor Udell, DECHERT, LLP, Hartford, Connecticut, for Appellant. H. Slayton Dabney, Franklin Ciaccio, KING & SPALDING, New York, New York, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which COOK and WHITE, JJ., joined. COOK, J. (pp. 8-11), delivered a separate concurring opinion in which WHITE, J., joined.

───────────────

**OPINION**

───────────────

CORNELIA G. KENNEDY, Circuit Judge. National Union Fire Insurance Company ("National Union") appeals the district court's affirmance of the bankruptcy court's decision disallowing National Union's petition for administrative expenses. National

1

Union provided the estate with workers' compensation insurance, and asks that the estate's contractual obligation to reimburse it for certain anticipated payments be granted administrative expense priority. Both the bankruptcy court and the district court rejected this argument, finding that the claim was not "actual" and did not benefit the estate. Because this case is controlled by our decision in *In re HNRC Dissolution Co.*, 536 F.3d 683 (6th Cir. 2008), we **AFFIRM**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

LTV Steel Company, Inc. and its subsidiaries filed voluntary petitions for Chapter 11 bankruptcy on December 29, 2000. LTV's subsidiaries include VP Buildings, Inc., United Panel, Inc., Varco Pruden International, Inc., VP-Graham, Inc., and LTV-Walbridge, Inc., collectively the "VP debtors."

The parties agree that National Union provided the LTV entities, including VP debtors, with workers' compensation insurance during calendar year 2001. This insurance, mandated by state law, guarantees that injured workers will be compensated in a timely manner regardless of the financial health of the employer. When an injury occurs in a covered year (such as 2001), National Union's insurance coverage is implicated. However, the actual payments to an injured employee are often required for years, or even decades, after the covered year.

The parties agree that under the terms of this agreement, which was entered into post-petition for post-petition activities and incorporates an earlier agreement, LTV and the VP Debtors are ultimately responsible for any workers' compensation claim that is incurred in 2001, regardless of when the benefits are actually paid (subject to certain limits not at issue). When a workers' compensation claim matures for an injury that occurred in 2001, the parties' contract requires National Union to pay the entirety of the claim and seek reimbursement from the VP Debtors. This obligation of the VP Debtors is described in the contract as "deductible loss reimbursements," and defined as "the portion of any *Loss* and *ALAE* [Allocated Loss Adjustment Expense] [National Union] pay[s] that [VP Debtors] must reimburse [National Union] for under any 'Deductible' or 'Loss Reimbursement' provisions of a *Policy*." The contract makes it clear that the VP Debtor's "Payment Obligation" means "the amounts that [VP Debtors] must pay [National Union]", and includes "any portions

thereof not yet due and payable [of] *Deductible Loss Reimbursements . . .*"  In return for National Union advancing this money, National Union charged LTV a premium (which was paid) and obtained collateral.

Employees were injured in 2001, imposing an obligation on National Union to pay out future benefits.  National Union asked that the reimbursement of this obligation for payments that are not due until after the closure of the bankruptcy estate be given administrative priority status.  Because the injured employees' claims are ongoing in nature, there is uncertainty as to the amount that National Union will ultimately pay.  The parties agreed to arbitrate the amount of National Union's claim.  The arbitration panel concluded that National Union's reimbursement claim for all LTV entities is valued at $2,494,498 for 2001.  The arbitration award did not allocate liability to the various subsidiaries.  Teresita Miranda, a manager with American International Companies, submitted an unsigned declaration that asserts, based on her review of the records, $993,769 is the amount that is attributable to the VP Debtors.  The VP Debtors dispute this figure. The "[c]onfidential source data" supporting Miranda's conclusion has not been provided to the court.

The bankruptcy plan to liquidate the VP Debtors' assets and dissolve the estates was confirmed by order of the bankruptcy court on December 17, 2003.  The bankruptcy court denied National Union's claim for administrative expense priority on December 21, 2007. The court concluded that the expense was not "actual" because National Union had not yet paid the benefits for the years after the closure of the bankruptcy estate.  Moreover, the bankruptcy court found that reimbursement of the payments would not benefit the estate. National Union appealed, elected to have the case heard by the district court rather than the BAP, and the district court affirmed the bankruptcy court on September 29, 2008.  National Union filed a timely notice of appeal.

## II. DISCUSSION

"We review the bankruptcy court's decision directly, according no deference to the district court.  The bankruptcy court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo." *Phar-Mor, Inc. v. McKesson Corp.*, 534 F.3d 502, 504 (6th Cir. 2008) (quoting *In re S. Air Transp., Inc.*, 511 F.3d 526, 530 (6th Cir. 2007)).

The bankruptcy code provides that administrative expenses, "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), "are, as a rule, entitled to priority over prepetition unsecured claims," *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5 (2000) (citing 11 U.S.C. §§ 507(a)(1), 726(a)(1), 1129(a)(9)(A)). "The purpose of [this priority] is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re United Trucking Service, Inc.*, 851 F.2d 159, 161 (6th Cir. 1988) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)). However, "[c]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." *In re Federated Dept. Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001). "'[A] debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate.'" *In re Eagle-Picher Industries, Inc.*, 447 F.3d 461, 464 (6th Cir. 2006) (quoting *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997)). The party seeking the priority "has the burden of proving that his claim constitutes an administrative expense." *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009) (citing *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987)).

The parties agree that the provision of insurance benefitted the estate, and that the transaction was entered into post-petition. However, the parties dispute whether the claim is "actual" under the meaning of the Bankruptcy Code and whether National Union's claim for reimbursement benefitted the estate.

We do not decide this case without precedent. In a published opinion, we recently adopted the reasoning of a district court that rejected the claimant's arguments:

> To that effect, the narrow application of § 503(b)(1)(A) is rather unambiguous on its face: the claimed expense must have been an "actual" cost that is "necessary" to the "preservation" of the estate. *See In re Patch Graphics*, 58 B.R. at 745 (citing *In re Club Dev. & Mgmt. Corp.*, 27 B.R. 610, 612 (9th Cir. BAP 1982)) ("An administrative expense may not be allowed absent a finding that the expense is necessary for preserving the estate."). It is in this regard that Zurich's claim fails as a simple matter of statutory interpretation on both fronts: the claimed expenses are not "actual" (i.e., not yet realized) and the payment thereof, when the obligations are

realized, cannot act to preserve an estate that no longer exists. At the moment Zurich's Claim was filed on the bar date for administrative expense claims, the ultimate loss projection for the deductible obligations was entirely speculative by nature and prospective by definition.

Nevertheless, despite LCC's subtle mention otherwise, there can be no question that Zurich will be forced to "advance" a substantial portion, if not all, of the deductible obligations in question. A key consideration, however, is the reality that Zurich is only contractually obligated to pay the deductibles, and subsequently seek reimbursement, once the claims actually "arise." Zurich contends that "arise" in this context should be viewed from a more macro perspective, effectively arguing that, even though the legal obligation to pay the expenses will not accrue until sometime in the future, the underlying event giving rise to the future claim (e.g., an employee's initial injury) necessarily occurred during the bankruptcy administration. In other words, Zurich asserts that the accrual of the claims should essentially relate back to the underlying insurance coverage as part and parcel of the relevant insurance policies, which include the premium obligations that were assigned administrative priority and satisfied accordingly. But Zurich does not, and cannot, provide any direct authority to support the contention that expenses necessarily realized post-confirmation can legally be characterized as "actual" under the Code.

*In re HNRC Dissolution Co.*, 371 B.R. 210, 225-26 (E.D. Ky. 2007) (footnotes omitted), *aff'd,* 536 F.3d 683 (6th Cir. 2008) (per curiam), *cert. denied*, 129 S. Ct. 2866 (2009).[1] Following this logic, National Union's claim will not be "actual" until it has made a payment and seeks reimbursement from the insured, which will typically occur years post-confirmation.

National Union argues that *HNRC* is distinguishable on several factual grounds, but none of the offered differences are material. First, National Union observes that the claimant in *HNRC* had only estimated the future indebtedness through a "report prepared by actuaries." *See id.* at 211. In contrast, National Union has, through arbitration, reduced its future indebtedness to all LTV entities to a specific figure by which all parties are bound. With some of the uncertainty of naked actuarial estimation reduced by reason of arbitration to which each side is bound, National Union posits, the claim

---

[1] Appellee brings to our attention that the Supreme Court denied certiorari in the *HNRC* case. We note this fact but afford it no weight because the denial of certiorari provides no guidance to this court, except to leave in place *HNRC* as binding law in this circuit. *See Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n.1 (1973).

is more "actual" here than in *HNRC*. The arbitration process may have tested the parties' actuarial estimates, but it did not change the nature of the claim to an "actual" total due by the debtors during the pendency of the bankruptcy estate. Under the terms of National Union's contract, the need for reimbursement only arises when payments are made. Until the payments are due, they are "not yet realized." *See id.* at 225. And under the reasoning of *HNRC*, it is only then that the claim becomes "actual."

Next, National Union argues that its claim can be paid under the provisions of the debtor's plan here because the plan creates a priority claims trust account from which administrative claims that are "not allowed as of the Effective Date" of the plan may be paid. However, it does not argue or point to any evidence that this was not the case in *HNRC* or how this transforms the claim to actual.

National Union further contends that the contractual language requiring reimbursement is different. In this case, the language of VP's contract provides that the payment obligation includes future deductible loss reimbursements that are not yet due. In *HNRC*, the insurance contract also required reimbursement of certain deductible amounts as they were incurred.[2] We can discern no meaningful distinction between the language of the two contracts.

The claimant also argues that *HNRC* was wrongly decided and conflicts with the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471 (1968). Because we are bound by the prior panel's decision, we do not consider these arguments further. *See* 6 Cir. R. 206 ("Reported panel opinions are binding on subsequent panels."); *see also, e.g.*, *Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001). There are two exceptions to this rule: an intervening Supreme Court decision, or the prior decision is overruled en banc. Neither exception applies to this case.

---

[2]The appellant submits these documents along with a motion for the court to take judicial notice. The motion was unopposed. We can take judicial notice of the factual record that provides the basis for a court's judgment. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). We grant the motion and consider the factual record as attached to the motion.

We are bound by *HNRC* to conclude that National Union's request for reimbursement is not an "actual" expense within the meaning of the bankruptcy code. In light of this conclusion, we do not address whether the reimbursement benefitted the estate or otherwise qualified for administrative expense priority.

### III. CONCLUSION

Because the arguments raised by appellant are foreclosed by our decision in *HNRC,* we **AFFIRM**.

---

## CONCURRENCE

---

COOK, Circuit Judge.  Constrained by the rule announced in *HNRC*, I concur in the majority opinion.  I write separately to question *HNRC*'s holding and to urge en banc review of the application of that rule to the present case.

*HNRC* holds that post-confirmation claims for deductible reimbursements by an insurance company fail to qualify as actual and necessary expenses that benefit the estate, and thus cannot attain administrative expense priority as a matter of law.  The *HNRC* panel[1] focused on whether the claim itself—a cost—provided an actual and necessary benefit to the estate.  But framed this way, there can be just one answer—a *cost* incurred by a business (let alone a bankrupt one) by definition provides no benefits and, arguably, does not become actual or necessary until the debtor receives the bill, which may not occur until after plan confirmation.  Only by analyzing the cost's purpose—assessing the *services* provided in exchange—can courts determine whether the expense meets § 503(b)'s requirements.

In our case, no party disputes that the debtor's survival as an operating entity required the insurance National Union provided.  But under *HNRC*'s holding, by scheduling prospective payments (some of which arise after plan confirmation), the debtor receives a windfall, avoiding the entire post-confirmation portion of the obligation.  The *HNRC* court accepted this result on grounds that such post-confirmation payments (unlike the pre-confirmation payments made on the same contract covering the same service) cannot qualify as actual, necessary, or a benefit to the estate by virtue of their post-confirmation nature.  But the timing of the payments should not affect the analysis of whether the cost of the service can satisfy the criteria necessary to qualify for administrative priority.

---

[1] The panel published an adopt-and-affirm opinion.  *See In re HNRC Dissolution Co.*, 536 F.3d 683 (6th Cir. 2008) (adopting 371 B.R. 210, 225–26 (E.D. Ky. 2007)).

Although *HNRC* noted a lack of authority "support[ing] the contention that expenses necessarily realized post-confirmation can legally be characterized as 'actual' under the Code," 371 B.R. 225–26, this statement ignores the two existing analytical frameworks—one developed by our circuit and the other by our sister circuits—both of which counsel in favor of treating the deductible reimbursements at issue as an administrative expense. Notably, the reasoning of these courts focused not on when a creditor bills the debtor for its services, but on either: 1) when the debtor obligates itself to pay or 2) when the service is rendered. This court, in particular, looks to when "the acts giving rise to a liability took place, not when they accrued" to determine administrative priority. *In re Sunarhauserman*, 126 F.3d 811, 818 (6th Cir. 1997). Confirming that payment timing lacks legal significance in this circuit's bankruptcy law, we held that when a debtor enters a pre-petition agreement to pay for services, making post-petition payments (even if the services were actually rendered post-petition) does not transform the obligation into an administrative expense. *Id.* at 816; *accord In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987). Other courts contrast an actual benefit with a potential one, holding that "the mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense." *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994) (internal emphasis, quotation marks, and citations omitted; outlining similar holdings in other courts). Under either framework, National Union's claimed administrative expense qualifies—VP Debtors signed the insurance contract post-petition, incurring liability then, and acquired actual, not potential, insurance coverage.

The *HNRC* court likewise erred in rejecting the insurer's claim as neither "necessary to preserve the estate," nor for the "benefit of the estate." The panel held that "[t]he bottom line remains that [the insured] is not contractually obligated to pay any of the deductible obligations in question until claims are filed, which will necessarily occur post-confirmation." 371 B.R. 226. A cost incurred post-confirmation, so *HNRC* tells us, cannot be necessary to preserve or benefit an estate that no longer exists. But given that a *cost* cannot be necessary to or benefit anyone, let alone a bankrupt estate, the better approach asks whether a creditor provided a necessary service for the estate's

benefit and preservation during the debtor's bankruptcy proceedings, not whether the creditor billed the debtor for those services during that time.

The Supreme Court held in *Reading Co. v. Brown*, 391 U.S. 471 (1968), that "the cost of insurance against tort claims arising during [bankruptcy] is an administrative expense payable in full . . . before dividends to general creditors." *Id*. at 483. The *HNRC* decision fails to adequately account for this clear and controlling statement of law. Though VP Debtors argue that *Reading Co.* applies to insurance premium payments only (and that this case implicates only loss-sensitive deductible reimbursement payments), they posit a distinction without difference. All agree that the post-confirmation insurance payments at issue represent part of the price of the insurance. If instead of insurance this case involved the purchase of raw materials for steel that the debtor, a steel producer, needed to fulfill an order, and managed to purchase on similar terms, no one would seriously contend that because the payments were slated to occur post-confirmation the steel was not necessary to preserve the estate.

This court consistently holds that when an estate derives a benefit from goods, services, or its own actions (breaching a contract, for example), the associated cost qualifies as an administrative expense, even when the cost remains unknown at plan confirmation. *See In re Eagle-Picher Indus., Inc.*, 447 F.3d 461, 464 (6th Cir. 2006) (citing with approval the practices of this and other courts allowing tort, patent infringement, trademark infringement, and breach of contract claims as administrative expenses); *In re United Trucking Serv. Inc.*, 851 F.2d 159, 162 (6th Cir. 1988) (concluding damage estimates rather than actual damages could serve as the basis for calculating the amount of an administrative expense for a breach of contract claim). Neither the contingent or unliquidated nature of a claim nor the timing of the payments should affect whether the service in question qualifies as an actual expense necessary to preserve the estate.

The *HNRC* decision will, as National Union warns, likely spell an end to the availability of extended payment terms for insurance in the bankruptcy setting.  The full court should use this case to take another look at *HNRC*.