OPINION
McKEAGUE, Circuit Judge.
After pulling over Felix Charles Booker, police officers developed suspicions that Booker had narcotics lodged in his rectum. The officers transported him to the Anderson County Detention Facility, where they met Deputy Jerry Shelton, and then on to Methodist Medical Center. At the hospital, Dr. Michael LaPaglia performed a series of increasingly intrusive medical procedures in search of narcotics. The final search, which fruited a rock of cocaine, involved administering a combina *522 tion of paralytic and sedative drugs and inserting a breathing tube.
Booker filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging, among other claims, that Shelton violated the Fourth Amendment. Shelton believes he is entitled to qualified immunity and appeals the district court’s denial thereof. Because we conclude that the district court did not conduct an individualized inquiry as to Shelton’s role in the search, we VACATE the district court’s denial of qualified immunity and REMAND with instructions for the district court to conduct an individualized inquiry as to Shelton’s role in the search.
I.
The facts of this case are familiar as we do not consider this appeal with a clean slate. See United States v. Booker, 728 F.3d 535 (6th Cir.2013) (“Booker I”). On the morning of February 12, 2010, .Oak Ridge Police Officer Steakley pulled over a ear. Booker was sitting in the passenger seat. During the stop, Steakley developed a suspicion that Booker was “attempting to conceal something” because of the way he was “moving around.” Id. at 537. Upon the driver’s consent to a search of the car, and drug dog Argo’s positive alerts for drugs, Steakley discovered on the passenger floorboard small plastic bags with a white residue and something that looked like crushed marijuana. At that point, Steakley arrested Booker for possession of marijuana and placed him in the cruiser of another officer, Officer Lewis Ridenour.
Eventually, Booker was transported to the Anderson County Detention Facility. Upon arrival, Shelton, the Detention Facility officer on staff, performed a strip search because of suspicions that Booker had contraband hidden somewhere on or in his body. With no success, Shelton contacted his supervisor and the district attorney'to decide how to proceed. Both told Shelton to take Booker to the hospital for further inspection. Neither Shelton nor any other officer sought or obtained a warrant to search Booker’s body.
At the hospital, LaPaglia performed three rectal searches. LaPaglia’s initial digital rectal search was not successful; Booker contracted his rectal muscles so that LaPaglia could not enter. LaPaglia then ordered a nurse to inject Booker with ten milligrams of Midazolam, a sedative and muscle relaxant, in order to conduct a second digital rectal examination. This time, LaPaglia felt a foreign object, but LaPaglia could not remove it because Booker again contracted his rectal muscles. Finally, LaPaglia administered a combination of 20 milligrams of Etomidate, a sedative, and 125 milligrams of Succinyl-eholine, a paralytic agent. He inserted a breathing tube to keep Booker breathing. This search was successful and LaPaglia removed a white object from Booker’s rectum.
A federal grand jury indicted Booker for one count of possession with intent to deliver more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Booker filed a motion to suppress the crack cocaine on the basis that the rectal searches violated the Fourth Amendment. Shelton testified for the government. The district court refused to suppress the evidence, and the case proceeded to trial. On February 2, 2011, a jury convicted Booker of the charge, and Booker appealed his conviction.
While the criminal case was pending, Booker filed a civil action in the Circuit Court for Anderson County, Tennessee, alleging various claims against Shelton, Steakley, and the others involved in the incidents, including claims for constitutional violations pursuant to 42 U.S.C. § 1983. *523 The defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441, 1443. Before the conclusion of Booker’s criminal case, the various defendants filed motions for summary judgment and motions to dismiss. Because the viability of many of Booker’s civil-rights claims depended on the outcome of his criminal appeal in this court under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the district court stayed action on those claims while dismissing other claims.
Booker’s appeal of his conviction was successful. On August 26, 2013, we reversed, holding that LaPaglia acted at the behest of law enforcement, thereby making his action state action, and that the search “shocked the conscience” and was-“‘unreasonable’ for the purposes of the Fourth Amendment.” Booker I, 728 F.3d at 540, 542, 546. We accordingly held that the exclusionary rule was the proper remedy. The government did not retry Booker and dismissed the indictment.
On September 6, 2013, the district court dissolved the stay and ordered the parties to file dispositive motions without the benefit of discovery. Shelton and Steakley moved for summary judgment, arguing that they did not violate Booker’s constitutional rights and were entitled to qualified immunity. The district court held that neither Steakley nor Shelton were entitled to qualified immunity. In a few short sentences, the district court addressed both defendants’ qualified immunity arguments and concluded that there were material facts in dispute, that a reasonable jury could find that Shelton’s actions violated Booker’s Fourth Amendment rights, and that the right to be free from this body-cavity search was clearly established. Shelton filed this timely interlocutory appeal to contest the denial of qualified immunity with respect to his involvement with the rectal searches.
II.
A denial of qualified immunity “is an appealable ‘final decision’ within the meaning of 28 U.S.C. § 1291” “to the extent that it turns on an issue of law.” Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Jurisdiction is not proper when the interlocutory appeal “solely contests] the plaintiffs account of the facts.” Family Serv. Ass’n ex rel. Coil v. Wells Twp., 783 F.3d 600, 607 (6th Cir.2015) (citing Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). To secure review of an appellate order denying qualified immunity, an officer “must be willing to concede the most favorable view of the facts to the plaintiff for the purposes of appeal.” Younes v. Pellerito, 739 F.3d 885, 888 (6th Cir.2014) (internal quotation marks and citation omitted). The only exception to this rule is when the evidence “utterly discredits” the plaintiffs version of events. Id. at 889 (alteration omitted) (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). Here, Shelton’s appeal does not “solely contest” Booker’s “account of the facts.” See Family Serv. Ass’n, 783 F.3d at 607. Rather, Shelton contends that on the undisputed facts, he did not violate Booker’s Fourth Amendment rights and even if he did, the law was not clearly established at the time of the search.
Qualified immunity protects Shelton from this lawsuit unless Booker can show that Shelton violated his constitutional rights and those rights were clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); Family Serv. Ass’n, 783 F.3d at 604. On appeal, we view the facts in the light most favor *524 able to Booker and Shelton is entitled to summary judgment if no reasonable jury could find in Booker’s favor. Fed.R.Civ.P. 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We review de novo the denial of a motion for summary judgment based on qualified immunity. Martin v. City of Broadview Heights, 712 F.3d 951, 957 (6th Cir.2013).
Shelton challenges the district court’s ruling on three bases. First, he contends that he did not violate the Fourth Amendment because LaPaglia conducted the rectal searches, and LaPaglia was not a state actor. Second, Shelton argues that the search did not violate the Fourth Amendment because the search was reasonably related to the penological goal of preventing contraband from entering the Anderson County Detention Facility. Third, he asserts that, even if the rectal searches violated Booker’s Fourth Amendment rights, the contours of the right were not clearly established on February 12, 2010.
A.
Shelton’s first argument&emdash;that he is entitled to qualified immunity because La-Paglia was not a state actor&emdash;is foreclosed by Booker I. In that case, we held:
LaPaglia must be treated as a government agent for Fourth Amendment purposes because the suspect was in the physical control of the police, the police knew what LaPaglia was going to do, the police knew that Booker did not consent, and a reasonable police officer would know that the doctor did not, independent of police direction, have the legal authority to intubate and paralyze the suspect without his consent.
Booker I, 728 F.3d at 541. We are bound by our prior published opinions unless the Supreme Court has intervened or we overrule the opinion en banc. 6 Cir. R. 32.1(b) (“Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc.”); see also Nat’l Union Fire Ins. Co. v. VP Bldgs., Inc., 606 F.3d 835, 839-40 (6th Cir.2010) (declining to consider arguments controlled by prior published opinions). Thus, Shelton’s argument is unavailing; LaPag-lia was a state actor, and we are left only with Shelton’s second and third points: whether Shelton’s involvement in LaPag-lia’s actions violated the Fourth Amendment and whether those rights were clearly established at the time of the search.
B.
Shelton contends that he enjoys qualified immunity because the rectal search was reasonable and necessary to prevent contraband from entering the detention facility, or, he argues in the alternative, that even if the search was unconstitutional, the law was not clearly established at the time of the violation. In evaluating a qualified immunity defense, it is well established that “[ejach defendant’s liability must be assessed individually based on his own actions.” Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir.2010) (citing Dorsey v. Barber, 517 F.3d 389, 399 n. 4 (6th Cir.2008)). This individualized analysis “must [] be done to ensure that a defendant’s liability is assessed based on his own individual conduct and not the conduct of others.” Pollard v. City of Columbus, 780 F.3d 395, 402 (6th Cir.2015). When the district court fails to conduct this analysis, this Court has the authority to “undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.” Johnson, 515 U.S. at 319, 115 S.Ct. 2151. In some cases, however, the better *525 course is to remand “for the district court to set forth with precision the basis for its decision.” Stoudemire v. Michigan Dep’t of Corr., 705 F.8d 560, 571 (6th Cir.2013) (citing Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988)); see also Wellness Int’l Network, Ltd. v. Sharif — U.S. —, 135 S.Ct. 1932, 1948-50, 191 L.Ed.2d 911 (2015) (declining to conduct a “deeply factbound analysis of the [unique] procedural history” even though “it would be possible” to do so). In Stoudemire, this Court remanded a prisoner’s § 1983 suit alleging deliberate indifference to medical needs for a more developed individualized inquiry with respect to one particular defendant. In doing so, the Court recognized that “[t]he district court did not mention any facts in the record that specifically pertained to [the defendant].” 705 F.3d at 570.
Similarly here, the district court ambiguously analyzed Shelton’s qualified immunity defense. The court conflated both Shelton and Steakley’s liability, analyzing the two defendants together and relying broadly and solely on this Court’s opinion in Booker I to conclude that “the police cannot escape liability by using a third party to engage in acts the police are constitutionally prohibited from engaging in.” Booker v. LaPaglia, No. 3:11-CV-126-PLR-CCS, 2014 WL 4259474, at *16 (E.D.Tenn. Aug. 28, 2014) (citing Booker I, 728 F.3d at 540-45). While this is an accurate statement of law, it does not negate the need for an individualized inquiry as to Shelton’s involvement in the search. And it does not answer whether his conduct violated Booker’s clearly established rights.
This record, the district court’s brief qualified immunity analysis, and the dissent’s factual summary indicate that it is still unclear exactly how Shelton participated in this search. This is significant because “[qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.” Hope v. Pelzer, 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Shelton claims and it is not disputed that his “only role was riding in the backseat of a police vehicle with Booker to the [hospital], staying at the hospital, and merely witnessing Dr. LaPaglia’s care and treatment of Booker.” Appellant’s Br. at 41. He maintains that “[m]ultiple peno-logical interests exist in determining what, if any, contraband [Booker] possessed pri- or to being booked into the facility.” Id. at 39, We simply are unable to determine Shelton’s specific role in the search and whether it is distinguishable from that of the other officers. Our precedent requires that role be addressed individually.
A remand here will result in the district court developing the factual record. Despite the dissent’s contentions, Shelton’s specific role in the search and his relationship to LaPaglia and the other officers involved in the hospital search cannot be determined on the present record. Despite the lack of record, the dissent improperly reads like an order granting summary judgment against Shelton in Booker’s favor by focusing on various facts irrelevant to Shelton’s liability, like events leading up to the hospital search not alleged to be constitutional violations. While the dissent suggests there is nothing to be gained from a remand, such factual development of the record may very well entitle Shelton to qualified immunity. At the very least, he will have been heard on that issue. But as it stands now, we cannot distinguish between Shelton’s involvement and that of the other officers as is required by our precedent. See Binay, 601 F.3d at 650. We therefore vacate and remand for the district court to address Shelton’s role in the search and to *526 properly evaluate his qualified immunity defénse.
This approach is consistent with the general principle that district courts decide issues like qualified immunity in the first instance. As we have recognized, “[w]e are at á disadvantage, generally, when we address on appeal an issue that was so tersely presented to the district court.” Brown v. Crowley, 312 F.3d 782, 788 (6th Cir.2002). This is especially true in the qualified immunity context. “District courts are far more familiar with the factual record in their cases than are the courts of appeals, and this knowledge can generate useful insights into the issues surrounding qualified immunity.” Id. And officers should not have to go through the “burdens of litigation” to only find out later .that immunity should have been granted. See Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting Mitchell, 472 U.S. at s526, 105 S.Ct. 2806).
VI. CONCLUSION
We VACATE the district court’s denial of qualified immunity and REMAND for further proceedings.