## In re UNION HOSPITAL ASSOCIATION OF THE BRONX d/b/a Union Hospital, Debtor.

### Bankruptcy No. 97 B 45032(TLB).

United States Bankruptcy Court,
S.D. New York.

Oct. 13, 1998.

As Corrected Oct. 15, and Oct. 19, 1998.

Kasowitz, Benson, Torres & Friedman, L.L.P., New York City, by Adam L. Shiff, for Debtor.

Bartlett, McDonough, Bastone & Monaghan, L.L.P., White Plains, NY, by Kenneth J. Burford, for Claimants.

Thelen Reid & Priest, L.L.P., New York City, by Teena H. Kim, for Creditors Committee.

### OPINION ON OBJECTION TO CLAIMS FOR CONTRIBUTION OR INDEMNITY

TINA L. BROZMAN, Chief Judge.

Union Hospital ("Union"), a recidivist chapter 11 debtor, moves to expunge an asserted administrative claim filed by Montefiore Medical Center, The Jack D. Weiler Hospital of the Albert Einstein College of Medicine, and Dr. Bhagwhat Gill (collectively, the "Claimants") because their claim for contribution or indemnification arising out of two tort actions pre-dating the first bankruptcy petition, which claim had not been asserted against Union in the non-bankruptcy forum prior to the last date to file proofs of claim in either chapter 11 case, was discharged in Union's first bankruptcy case or is time barred in this one. In a nutshell, resolution of the parties' dispute turns on whether the claimants were known or unknown creditors. If known, they were entitled to notice by mail of the bar date, which they did not receive; if unknown, notice by publication sufficed to bar their claims.

### I.

Union and the Claimants rendered medical services to two individuals from which lawsuits arose naming the parties as defendants. In 1992, David Serrano, by his mother, filed suit for alleged malpractice said to have occurred earlier that year. In 1993, Ruby Zammett filed a wrongful death action against Union and Claimants for acts which occurred during 1990 and 1991. The Claimants hired the law firm of Bower & Gardner to represent them in both the *Serrano* and *Zammett* actions. When the attorneys working on the matters moved to Bastone and Monaghan, LLP (the "Bastone firm") some time in late August, 1993, the new firm was substituted for the old one. In neither action did the Claimants serve Union with a crossclaim, nor did they file a separate action against Union for indemnification or contribution.

#### A. Union's First Foray in Bankruptcy Court

On September 23, 1994, Union filed its first chapter 11 petition. Union promptly

served on Bower & Gardner, identified as counsel in the *Serrano* action, notice of this bankruptcy filing and the Clerk's Certificate of Filing Chapter 11. This is not surprising; Union obviously intended to notify the parties to the action of its bankruptcy, the effect of which was to stay the lawsuit. For reasons unclear on this record, similar notice was not sent in the *Zammett* action.[1]

The bar date for filing timely proofs of claim was set for February 1, 1996. As approved in form and method by the Bankruptcy Court, Union published notice of the bar date 12 times and sent direct notice to all its patients and employees for the prior 10 years. This direct mailing did not include the Claimants, who were neither patients nor employees. The Claimants filed no proof of claim. On March 26, 1996, Union filed its plan and disclosure statement providing that the general unsecured creditors, the class in which Serrano, Zammett and the Claimants were included, would receive no distribution under the plan. (The claims of the plaintiffs in those actions were not covered by insurance.) After confirmation of the plan on May 31, 1996, Union published notice of that fact. It also sent notice by mail in July, 1996, to the Bastone firm in both the *Serrano* and *Zammett* actions. One effect of the plan was to discharge Union from its unsecured claims. As a result of that discharge, on February 14, 1997, the debtor was dismissed from both actions. Neither has yet been tried against the remaining defendants.

*B. Union's Second Sojourn in Chapter 11*

On July 29, 1997, Union filed its second chapter 11 petition. Remember that by this time Union was no longer a defendant in either state court action and had not been sued by the Claimants for indemnity or contribution. On October 25, 1997, Union filed its plan and disclosure statement, but a number of issues necessitated adjournment of the hearing on the disclosure statement. Pursuant to an October 27, 1997 order, December 1, 1997 was set as the bar date to file timely proofs of claim. Union published notice of the bar date seven times but did not send

notice by mail to the Claimants. The Claimants filed no proof of claim.

A separate, later bar date of July 1, 1998, was set for administrative claims, including those relating to Union's postpetition healthcare service resulting in personal injury. Before the administrative claims bar date passed, the Claimants filed an alleged administrative claim for indemnity or contribution arising out of the *Serrano* action. Union asserts that this claim is barred and, for that reason, has not challenged its assertion as an administrative, rather than general unsecured, claim. Union has indicated its intention to do so, however, should I find that the claim is not barred.

Union's committee of unsecured creditors (the "Committee") joins Union in its attack on the claim, adding that, in any event, it must be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code as a contingent claim for reimbursement or contribution. The Claimants agree, but, together with the debtor, nonetheless desire a ruling with respect to the timeliness of the claim because they would assert a liquidated claim against Union were their claim to become fixed in time to move for reconsideration under section 502(j) of the Bankruptcy Code.

## II.

Union argues that this claim should be expunged from its current bankruptcy case because the claim, even if the Claimants were found to have been known creditors, could only be asserted in the first bankruptcy case, receiving a distribution identical to what creditors in the same class received, that is, zero. That contention flows, says Union, from the decision of my colleague Judge Beatty in *Emons Indus., Inc. v. Allen (In re Emons Indus., Inc.)*, 220 B.R. 182 (Bkrtcy. S.D.N.Y.1998). There, mass tort claimants unknown by the debtor at the time its plan was confirmed, and for whom no bar date was ever set and no class representative appointed, were held entitled to treatment identical with that afforded known tort claimants under the plan and to no further recovery from the rehabilitated debtor. Judge

---

**1.** Although notice was sent to Bower & Gardner, counsel for the Claimants, it was addressed to the attorneys representing defendants other than the Claimants.

Beatty's rationale was that those creditors' claims were prepetition claims which could still be timely filed and share in the same recovery afforded to the known tort creditors under the terms of the confirmed plan.

Notwithstanding that she held the claims of these unknown creditors could not have been barred absent the setting of a bar date, Judge Beatty remarked that she had found "no case which expressly discusses whether in pursuing its claim against the reorganized debtor a creditor who failed to receive notice of the bar date is entitled to receive (a) the distribution it would have received under the debtor's confirmed plan or (b) a[sic] 100 cents on the dollar. *When a creditor does not receive the requisite notice of the bar date and its claim is not barred, the appropriate remedy should be to put the creditor in the same position it would have been had notice been properly served by allowing the creditor to file a late claim against the estate."* *Id.* at 192 (emphasis supplied). This language plainly is *dictum* inasmuch as Judge Beatty held that the claims of the unknown creditors for whom no bar date had been set could not be late. Extrapolating from *Emons,* Union urges that, whether known or unknown, the Claimants are entitled to no more than other tort claimants received under the first plan. However tempting it might be to consider whether the *Emons* dictum ought have broader applicability, it is unnecessary to do so, because I conclude that the Claimants were unknown creditors for whom publication notice sufficed to bar the claim and work its discharge in the first bankruptcy case.

■ Congress intended the definition of a "claim" for bankruptcy administration to be extremely broad, including contingent and unmatured claims. *See* 11 U.S.C. § 101(5); *Emons,* 220 B.R. at 193. The proper focus in deciding whether a claim arose prepetition or postpetition is on the time when the acts giving rise to the alleged liability were performed. *In re Chateaugay Corp.,* 87 B.R. 779, 796 (S.D.N.Y.1988), *aff'd sub nom. Pension Ben. Guar. Corp. v. LTV Corp.,* 875 F.2d 1008 (2d Cir.1989), *rvs'd on other grounds,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *In re Johns–Manville*

*Corp.,* 57 B.R. 680, 690 (Bankr.S.D.N.Y.1986). Thus, a third party's claim for indemnity and contribution against a debtor arising from a pre-bankruptcy tort is a prepetition claim against the bankruptcy estate, subject to the bankruptcy court's jurisdiction. *See Acevedo v. Van Dorn Plastic Machinery, Co.,* 68 B.R. 495, 498 (Bankr.E.D.N.Y.1986). Here, the two alleged tortious acts leading to the state court lawsuits occurred prior to Union's first bankruptcy petition, as a result of which they were subject to the jurisdiction of the bankruptcy court. So we turn to whether the claim which the Claimants now assert was discharged in that first case.

■ Confirmation of a plan of reorganization, so long as it does not provide for the liquidation of the debtor, discharges the reorganized debtor from any preconfirmation debt whether or not a proof of claim is filed, the claim is allowed or the holder of the claim has accepted the plan. *See* 11 U.S.C. § 1141(d)(1). Even the claims of tort creditors unaware of the bankruptcy are ordinarily discharged. *Brown v. Seaman Furniture Co., Inc.,* 171 B.R. 26, 27 (E.D.Pa.1994); *Grant v. U.S. Home Corp. (In re U.S.H. Corp.),* 223 B.R. 654, 657 (Bankr.S.D.N.Y. 1998). Courts have held, however, that for a particular debt to be discharged, one predicate must be met—the creditor must have been given notice of the bankruptcy and of the relevant bar date sufficient to satisfy due process. *See Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.),* 62 F.3d 730, 735 (5th Cir.1995); *In re Longardner and Assocs., Inc.,* 855 F.2d 455, 465 (7th Cir. 1988). The due process concerns are met if notice is "reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); In re *Waterman Steamship Corp. v. Aguiar (In re Waterman Steamship Corp.),* 157 B.R. 220, 221–22 (S.D.N.Y.1993). This is not to say, however, that all creditors are entitled to the same notice before their claims are discharged, for the debtor can not necessarily identify all its creditors. Whereas publication notice of the claims bar date

may suffice for unknown creditors because "in the case of persons ... unknown, employment of an indirect and even probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights[,]" *Mullane,* 339 U.S. at 317, 70 S.Ct. 652, if a creditor is known to the debtor, actual notice of the bar date must be afforded to the creditor. *See City of New York v. New York N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

▮ Here, notice of the bar date in the first case was published three times in *The New York Daily News,* twice in the *Gannett* suburban newspapers, three times in *The Amsterdam News,* and four times, in Spanish, in *El Diario–La Prensa.* The proper inquiry in evaluating notice is whether the party giving notice acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice. *In re Best Products Co., Inc.,* 140 B.R. 353, 358 (Bankr.S.D.N.Y.1992) (citing *Weigner v. New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989)). Union's choice of multiple notices in four different area newspapers, including one in Spanish, serving the patient population which Union served, was a reasonable effort to reach unknown creditors. The only issue left to tackle, therefore, is whether the Claimants fall within the rubric of the unknown creditor.

▮ A "known" creditor is one whose identity, if not actually known, is "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). An "unknown" creditor is one, in contradistinction, whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652. A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts[,]" *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), but reasonable diligence does not mandate "impracticable

and extended searches ... in the name of due process." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652.

▮ No matter how hard the debtor searched its own books and records, it would not have discovered the potential claims for contribution and indemnity now asserted by the Claimants because prior to the imposition of the bar dates in both chapter 11 cases the Claimants had not asserted cross-claims or commenced actions against Union seeking either contribution or indemnity. The claims possessed by the Claimants were, at best, conjectural or future, dependent upon the outcome of the suits by the plaintiffs. That notice of the confirmation of the first plan was sent to counsel for the plaintiffs and for the Claimants is not inconsistent with the assertion that the Claimants were not known creditors; confirmation of that plan discharged any indebtedness to the plaintiffs, so it is entirely reasonable that the parties were notified. *See Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650, 656 (M.D.Fla.1991) ("Even assuming that [the debtor] knew there was a possibility of a claim by [the claimant], [the debtor] was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims.") Certainly a debtor cannot hide behind a cursory review of its books and records. *See In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 674, 680–81 (Bankr.S.D.N.Y.1993). But Union sent notice to all persons who were either patients or employees during the ten years preceding its chapter 11 filing, hardly an insignificant effort. Debtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates. *See Chemetron Corp. v. Jones,* 72 F.3d 341, 347–48 (3d Cir.1995).

▮ In *U.S.H.,* 223 B.R. 654, the claimants, purchasers of homes constructed by the debtor, had claims arising out of alleged construction defects. My colleague Judge Lifland held that these creditors were unknown and that their claims had been discharged.

These creditors are analogous to Union's former patients, to whom it sent actual notice of the bar date. The Claimants here are one further step removed from Union than were the home-buyers to the debtor in *U.S.H.;* Union could be liable to the Claimants only to the extent that they ultimately were adjudged liable to the plaintiffs in the state court suits. There is only one case cited by the Claimants which gives any pause, *In re Sharon Steel Corp.,* 110 B.R. 205 (Bankr. W.D.Pa.1990). There, a creditor was granted leave to file a late proof of claim (relief which the Claimants never sought) where the creditor was unaware of an indemnity claim it had against the debtor because the creditor had not yet been served with a complaint in the underlying action, unlike here. Not only is the case factually distinguishable, but the court cited no like case for its conclusion that such a potential indemnity creditor is a known one. I conclude that the Claimants were unknown creditors in the first bankruptcy case. Moreover, by the time the second case was filed, the plaintiffs' suits against Union had been dismissed in reliance on Union's bankruptcy discharge, as a result of which the Claimants were unassailably unknown creditors had their claim somehow survived the first bankruptcy case.[2]

Having received notice of confirmation of the plan in that first bankruptcy case, the Claimants could have, but did not, seek relief from the order of confirmation discharging their claim. *Cf. 401 East 89th Street Owners, Inc.,* 223 B.R. 75 (Bankr.S.D.N.Y.1998). Never have they sought leave to interpose a late-filed claim on the basis of excusable neglect, the burden of which would have been on their shoulders to prove. *R.H. Macy &*

*Co., Inc.,* 161 B.R. 355, 360 (Bankr.S.D.N.Y. 1993). In short, there have been shown no equities which suggest that the Claimants ought to receive a distribution in the second bankruptcy case arising out of a claim which was discharged in the first, particularly when the unsecured creditors in the first case, including the known tort creditors whose claims were not covered by insurance, received no distribution.

Accordingly, Union's motion to expunge the claim of Montefiore Medical Center, The Jack D. Weiler Hospital of the Albert Einstein College of Medicine, and Dr. Gill is granted. SETTLE ORDER consistent with this decision.

---

**2.** The Claimants argue that they were known creditors because, in New York, contribution and indemnification claims are implicit as between co-defendants. For this proposition they cite New York Civil Practice Law and Rules § 1601, "Limited liability of persons jointly liable," and § 1602, "Application," as well as *Marsala v. Weinraub,* 208 A.D.2d 689, 617 N.Y.S.2d 809 (1994). Sections 1601 and 1602 provide for the limitation of liability for a co-defendant who is found to be liable for fifty percent or less of the verdict, and various exceptions. *Marsala* concludes that the rule is automatically applicable unless an exception applies under § 1602 and that affirmative defenses need not be pleaded by the defendant to limit its liability under these provisions. These provisions do not help the Claimants in their argument that Union should have been aware of a potential claim, however, because the sections merely provide for the potential for a contribution claim from a party deemed to be more than 50% liable. C.P.L.R. § 1403, to which the Claimants also refer, establishes how a contribution claim may be asserted, by a separate action, cross-claim, counterclaim or third party claim. This does not suggest that Union should have known the Claimants had a claim when they hadn't asserted it in any of the approved methods.